# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS SAINCOME, individually and on behalf of other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TRULY NOLEN OF AMERICA, INC., an Arizona corporation; and DOES 1 through 10,<br><br>Defendants. | CASE NO. 11-CV-825-JM (BGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Doc. No. 5 |

Plaintiff Thomas Saincome brings the instant class action against his employer, Defendant Truly Nolen of America, Inc., alleging a policy and practice of failure to pay overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Defendant now brings a motion to compel arbitration and stay the current action pursuant to the Federal Arbitration Act ("FAA").

Pursuant to CivLR 7.1(d)(1), the court determines this matter is appropriate for resolution without oral argument. For the reasons set forth below, the court GRANTS IN PART and DENIES IN PART Defendant's motion.

**I.  BACKGROUND**[1]

Plaintiff is an individual who has worked for Defendant since January 2009, most

---

[1] The facts set forth here are drawn from Plainitiff's Complaint.

recently as a pest control technician in San Diego, California. Defendant is a major provider of pest control services throughout the United States, owning and operating over eighty locations throughout the country with over a thousand employees. According to Plaintiff, Defendant has a policy and practice of failing to include earned commissions and bonuses when calculating its employees' regular rate of pay. As a result, Plaintiff and other employees routinely receive less overtime pay than they are entitled to under the FLSA, which requires that employees be compensated at one-and-a-half-times their regular rate for any hours worked beyond the standard forty-hour work week.

Plaintiff filed the instant action on April 19, 2011, seeking damages and restitution on behalf of himself and a class of similarly situated current and former employees. The suit was brought as a collective action under 29 U.S.C. § 216(b). Defendant now moves to compel arbitration of this dispute, pursuant to an arbitration agreement signed by Plaintiff at the outset of his employment with Defendant. Defendant further seeks a declaration prohibiting Plaintiff from pursuing his arbitration on a class-wide basis, as well as an award of attorneys' fees incurred in bringing this motion to compel enforcement of the parties' agreement. Plaintiff opposes Defendant's motion.

## II. LEGAL STANDARD

The Federal Arbitration Act was enacted by Congress for the purpose of "revers[ing] the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991). To that end, arbitration provisions falling within the FAA's purview are generally deemed "valid, irrevocable, and enforceable." 9 U.S.C. § 2. The Act is regarded as "manifest[ing] a 'liberal federal policy favoring arbitration agreements,'" Gilmer, 500 U.S. at 25 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)), and is to be "rigorously enforce[d]," Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221 (1985).

However, § 2 of the FAA also "permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any

contract.'" AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1746 (2011) (quoting 9 U.S.C. § 2). In other words, "agreements to arbitrate [may] be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" Id. However, to the extent that a defense singles out arbitration agreements for special treatment, it is considered preempted by the FAA. Id. "To evaluate the validity of an arbitration agreement, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'" Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1170 (9th Cir. 2003) (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).

**III. DISCUSSION**

It is undisputed that Plaintiff met with a representative of Defendant on or around December 31, 2008 to complete certain required new-hire paperwork, including a document entitled "Agreement to Binding Arbitration" (the "Agreement"). The Agreement and the accompanying signature pages were the last three pages of a ten-page document titled "The 'RESOLVE' Program," which described Defendant's mandatory conflict resolution program.[2] The Agreement states in pertinent part:

> Any controversy, claim or dispute between a partner and Truly Nolen of America (hereafter "TNA") based upon or arising out of at-will employment, contract, tort, fraud, statute, misrepresentation, and claims of harassment or discrimination, including but not limited to race, color, sex, religion, national origin, disability, sexual orientation, marital status or age will be resolved by Binding Arbitration administered by the American Arbitration Association (hereafter known as "AAA") . . . . The Arbitrator may grant any remedy or relief that the Arbitrator deems just and equitable, including any remedy that would have been available if the matter had been heard in court. . . .
>
> The only legal claims between the partner and Truly Nolen of America which are not included within this Agreement for Arbitration are claims for worker's compensation, unemployment compensation benefits and/or claims for benefits under TNA's benefit plan if the plan is with an independent provider which does not provide for arbitration of such disputes. . . .

It is also undisputed that Plaintiff signed a copy of the Agreement before beginning his employment with Defendant.

Defendant argues, and Plaintiff does not contest, that the current dispute between the

---

[2] See Exh. 1 to Defendant's Motion to Compel Arbitration, hereafter "RESOLVE Pamphlet."

parties falls squarely within the scope of the Agreement. However, Plaintiff claims that the Agreement itself is unenforceable for several reasons. First, Plaintiff argues that he cannot have consented to the Agreement because he was unaware of the contents of the paperwork that he signed on December 31, 2008. Second, Plaintiff contends that the actual terms of the Agreement are unconscionable, and therefore cannot be enforced. Finally, Plaintiff claims that the Agreement is unenforceable as the product of undue influence. Each of these arguments is addressed in turn below before turning to the issues of collective action and attorneys' fees.

**A.      Enforceability of Arbitration Agreement**

**1)      Lack of mutual consent**

Prior to 2009, Plaintiff was employed by Dannex Pest Control ("Dannex"), a company that was acquired by Defendant in 2008. According to Plaintiff, following the acquisition, he was ordered to report to Defendant's office on December 31, 2008. Upon arriving, he found members of Defendant's and Dannex's management teams as well as other pest control technicians "chaotically scrambl[ing] to complete paperwork." Plaintiff was directed to meet with Justin Mitchell, one of Defendant's Branch Managers, in order to complete his new-hire paperwork. Plaintiff claims that Mr. Mitchell then "went through the packets [of paperwork], hunted the signature pages, ripped out each page with a signature line, and handed them to Plaintiff, who dutifully signed them." Plaintiff claims that he then returned the signed pages to Mr. Mitchell; however, he did not receive copies of the papers he had signed, nor was he given a copy of the AAA rules or the RESOLVE Program packet. Based on this series of events, Plaintiff claims that he cannot have assented to arbitrate all his disputes with Defendant because Plaintiff was unaware of the contents of the Agreement at the time that he signed it.

Under California law, "ordinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms. A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." Metters v. Ralphs Grocery Co., 161 Cal. App. 4th 696, 701 (2008) (quoting Marin Storage v. Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc., 89 Cal. App. 4th 1042, 1049 (2001)). However, an exception to this general rule exists where "the one who signs the instrument is unaware of the contractual

provisions," such as "when the writing does not appear to be a contract and the terms are not called to the attention of the recipient." Id. at 701. Here, Plaintiff clearly was or should have been aware that the documents he was given to sign were agreements that were part of the terms of his employment with Defendant. Although Plaintiff claims that the documents were not explained to him, there is no evidence that their terms were affirmatively misrepresented to him, or that the fact that he was signing a contractual agreement was disguised or hidden from Plaintiff. Indeed, the signature page itself is entitled "Acceptance of Binding Arbitration," and contains a warning to "Please Read Carefully: Acceptance of this Policy Affects your Legal Rights." Compare Metters, 161 Cal. App. 4th at 703 (citing a California case finding enforceable an agreement to arbitrate that "appear[ed] on the signature page of [the] form under the bold face heading warning applicants that they must read the paragraphs on that page 'Very Carefully'"), with id. at 702-03 (finding arbitration agreement invalid where the plaintiff signed a document labeled "Notice of Dispute & Request for Resolution" and the plaintiff's signature appeared next to the statement, "I hereby submit this dispute for informal resolution directly by the Company's management"), and id. at 702 (describing another California case in which the court found an arbitration provision unenforceable "because it was buried in small print on the reverse side of a form on which a carpet manufacturer acknowledged receipt of yarn shipments from the yarn distributor"). Even if it is true that Plaintiff was rushed through the signing process and was not given a copy of the documents he signed—a fact that Defendant disputes—there is also no evidence that Plaintiff asked for and was denied either additional time to read the Agreement or a copy of the terms to take with him. Therefore, there is insufficient justification for invalidating the Agreement on these grounds.

**2)  Unconscionability**

Plaintiff also argues that the Agreement is unconscionable and therefore unenforceable. As discussed above, the doctrine of unconscionability has been recognized as a generally valid reason for refusing to enforce an arbitration agreement under the FAA. The question is thus whether this particular Agreement is unconscionable under California law.

CAL. CIV. CODE § 1670.5(a) permits a court to refuse to enforce all or part of a contract

where the court "finds the contract or any clause of the contract to have been unconscionable at the time it was made." "Unconscionability refers to an 'absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" Ingle, 328 F.3d at 1170 (quoting A&M Produce Co. v. FMC Corp., 135 Cal. App. 3d 473, 486 (1982)). In California, unconscionability has been interpreted to have both a procedural and a substantive element, both of which must be present in order for the doctrine to apply. Armendariz v. Foundation Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000). The procedural element "focus[es] on 'oppression' or 'surprise' due to unequal bargaining power," while the substantive element looks for "'overly harsh' or 'one-sided' results." Id. (quoting A&M Produce Co., 135 Cal. App. 3d at 486-87). However, the two elements "need not be present in the same degree":

> "Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves." In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.

Id. (quoting 15 WILLISTON ON CONTRACTS (3d ed. 1972) § 1763A, pp. 226-27).

Keeping these principles in mind, we now address each of these elements separately.

### a. Procedural unconscionability

"To determine whether [an] arbitration agreement is procedurally unconscionable, the court must examine 'the manner in which the contract was negotiated and the circumstances of the parties at that time.'" Ingle, 328 F.3d at 1171 (quoting Kinney v. United Healthcare Servs., Inc., 70 Cal. App. 4th 1322, 1329 (1999)). Procedural unconscionability is present where the contract is the product of either oppression or surprise:

> A contract is oppressive if an inequality of bargaining power between the parties precludes the weaker party from enjoying a meaningful opportunity to negotiate and choose the terms of the contract. Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms.

Id. (quoting Stirlen v. Supercuts, Inc., 51 Cal. App. 4th 1519, 1532 (1997)) (internal quotation marks omitted).

In this case, Plaintiff argues that the Agreement was oppressive because its terms "were not subject to negotiation" and because it was presented to Plaintiff "on a take-it-or-leave-it basis" by a party with "superior bargaining power." Indeed, it is clear from the Agreement itself that Plaintiff was required to accept its terms if he wished to continue working for Defendant.[3] Moreover, as Plaintiff's prospective employer, there is little question that Defendant was in a position of superior bargaining strength. As the California Supreme Court has noted, where an agreement is imposed as a condition of employment, "the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the . . . agreement stands between the employee and necessary employment." Armendariz, 24 Cal. 4th at 115; see also Neal v. State Farm Ins. Co., 188 Cal. App. 2d 690, 694-95 (1961) (finding contract providing for payment of insurance salesman to be a contract of adhesion because it was "prepared, drafted, and printed by the employer, [and] left no room for bargaining by the individuals seeking employment"); accord Intershop Commc'ns v. Superior Court, 104 Cal. App. 4th 191, 201 (2002) (characterizing the plaintiff's contract with employer to exchange certain stock options as adhesive). Thus, under California law, the Agreement was a contract of adhesion, satisfying the procedural element of the unconscionability inquiry. See Stirlen, 51 Cal. App. 4th at 1533 (holding that the element of procedural unconscionability is established where the challenged clause is part of a contract of adhesion).

Defendant contends that "if Plaintiff did not want to sign the RESOLVE Program form along with the other new hire materials, he could have simply chosen not to do so and pursued employment with another pest control company." However, "whether the plaintiff had an opportunity to decline the defendant's contract and instead to enter into a contract with another party that does not include the offending terms is not the relevant test for procedural unconscionability." Ferguson v. Countrywide Credit Indus., Inc., 298 F.3d 778, 784 (9th Cir.

---

[3] For example, page 5 of the RESOLVE Pamphlet states: "For all employees hired after December 01, 2005, your agreement to binding arbitration of any employment dispute is mandatory, which means ***you must agree to binding arbitration in order to be hired or to remain employed by Truly Nolen***." (Emphasis added.)

2002); see also Wherry v. Award, Inc., 192 Cal. App. 4th 1242, 1248 (2011) ("[T]he fact there were other real estate firms where plaintiffs could have contracted to work does not necessarily vitiate the unconscionability . . . ."). Rather, "where a party in a position of unequal bargaining power is presented with an offending clause without the opportunity for meaningful negotiation, oppression and, therefore, procedural unconscionability, are present." Ferguson, 298 F.3d at 784.

### b. Substantive unconscionability

"Substantive unconscionability involves the imposition of harsh or oppressive terms on one who has assented freely to them." Stirlen, 51 Cal. App. 4th at 1532-33 (quoting HAWKLAND, UNIFORM COMMERCIAL CODE SERIES (1996) § 2-302:02 (Art. 2), p.246). "[A] contractual term is substantively suspect if it reallocates the risks of the bargain [between the parties] in an objectively unreasonable or unexpected manner." Id. at 1532. The term is considered substantively unconscionable if it is "so one-sided as to 'shock the conscience.'" Id. (quoting Cal. Grocers Ass'n v. Bank of Am., 22 Cal. App. 4th 205, 214 (1994)).

Plaintiff argues that several terms of the Agreement are one-sided, giving an unfair advantage to Defendant in any disputes that might arise between the parties. In addition, Plaintiff claims that forcing him to arbitrate the instant claim would impermissibly curtail certain of his rights under the FLSA.

### (i) Lack of corresponding waiver of right to jury trial by Defendant

Plaintiff argues that the Agreement is one-sided because it binds employees to arbitrate their disputes with Defendant without any reciprocal agreement to arbitrate from Defendant. Specifically, Plaintiff points to the portion of the Agreement that states: "By signing the acceptance form and accepting or continuing employment, *the partner* voluntarily, knowingly and intelligently waives any right he or she may have to seek remedies in court, including the right to a jury trial." (Emphasis added.) According to Plaintiff, while this clause requires employees to submit any disputes with Defendant to arbitration, "[n]othing in the agreement states that [D]efendant, through a signature of one of its agents, also agrees to voluntarily,

knowingly and intelligently waive[] the right to a jury trial in any claim against an employee." Without such a reciprocal waiver, Plaintiff argues, "the agreement is not truly mutual."

First, to the extent that Plaintiff relies on the fact that Defendant is not a signatory to the Agreement to demonstrate that Defendant is not bound by its terms, this argument is contradicted by California law, under which "[i]t is well established that the receipt and acceptance by one party of a writing signed by the other only, [] purporting to embody all the terms of a contract between the two, binds the acceptor as well as the signer, to the terms of the writing." Benard v. Walkup, 272 Cal. App. 2d 595, 602 (1969). Second, although the language quoted above, when read alone, appears to be binding only on Plaintiff, when examined in the context of the Agreement as a whole, it is evident that the Agreement binds *both* parties to arbitrate their claims against the other. See CAL. CIV. CODE § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."). The first paragraph of the Agreement provides: "Any controversy, claim or dispute between a partner and Truly Nolen of America . . . will be resolved by Binding Arbitration administered by the American Arbitration Association . . . ." Similarly, the Agreement later describes the process by which Defendant may initiate arbitration of a dispute, implying that a claim brought by Defendant against Plaintiff must also be submitted to the same alternative dispute resolution procedure. Finally, the attached explanation of the arbitration program—which is physically part of the same document as the Agreement and clearly intended to be incorporated into the contract between the parties—specifically states: "This policy applies to claims that Truly Nolen of America may have against a partner, as well as claims against Truly Nolen by a current or former partner." Thus, any contention that the Agreement is one-sided on its face with regard to the parties' obligations to submit disputes to arbitration is simply incorrect.

On the other hand, there is an argument to be made that, even if the actual language of the Agreement purports to bind both parties equally, in practice, the actual implementation of the Agreement is likely to be one-sided in favor of Defendant. See Ting v. AT&T, 319 F.3d 1126, 1149 (9th Cir. 2003) ("In determining whether an arbitration agreement is sufficiently

bilateral, courts assessing California law look beyond facial neutrality and examine the actual effects of the challenged provision."). The Agreement specifically requires that claims "based upon or arising out of at-will employment, contract, tort, fraud, statute, misrepresentation, and claims of harassment or discrimination, including but not limited to race, color, sex, religion, national origin, disability, sexual orientation, marital status or age" be subject to arbitration; the language itself makes no distinction between claims brought by employees against Defendant and claims brought by Defendant against its employees. However, the Ninth Circuit has also found that broad, facially neutral agreements to arbitrate in the employment context are in actuality far more likely to inure to the benefit of the employer:

> Because the possibility that [the employer] would initiate an action against one of its employees is so remote, the lucre of the arbitration agreement flows one way: the employee relinquishes rights while the employer generally reaps the benefits of arbitrating its employment disputes.
> The only claims *realistically affected* by an arbitration agreement between an employer and an employee are those claims employees bring against their employers. By essentially covering only claims that employees would likely bring against [their employer], [an] arbitration agreement's coverage would be substantively one-sided *even without [an] express limitation to claims brought by employees*.

Ingle, 328 F.3d at 1173-74 (emphasis added) (footnotes omitted). Similarly, in Ferguson, the Court described the claims specifically covered by an agreement to arbitrate—there, "claims for breach of express or implied contracts or covenants, tort claims, claims of discrimination or harassment based on race, sex, age, or disability, and claims for violation of any federal state, or other governmental constitution, statute, ordinance, regulation, or public policy"—as "claims employees are most likely to bring against [their employer]." 298 F.3d at 784-85; accord Mercuro v. Superior Court of L.A. County, 96 Cal. App. 4th 167, 175-76 (2002) (holding that agreement specifically covering "claims for breach of express or implied contracts or covenants, tort claims, claims of discrimination based on race,سex, age or disability, and claims for violation of any federal, state or other governmental constitution, statute, ordinance, regulation or public policy" in effect "compels arbitration of the claims employees are most likely to bring against [their employer]"). It is of note that the policy language in Ferguson and Mercuro tracks quite closely to the language in the Agreement here

setting forth the types of disputes expressly reserved for arbitration. Thus, it could be said that the Agreement is somewhat one-sided in application.

Nevertheless, what minor degree of substantive unconscionability that exists here is *de minimis* at best. Ferguson is distinguishable because the arbitration agreement in that case also expressly *excluded* from coverage a number of claims that the employer was "most likely to bring against its employees," including "claims for . . . injunctive and/or other equitable relief for intellectual property violations, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information." 298 F.3d at 784-85. And although the Ingle Court found the agreement in question there unconscionable as a whole, this finding was based not only on the nature of the claims subject to arbitration, but also on the substantive unconscionability of a number of other provisions, including the one-year statute of limitations for arbitration and the agreement's cost-splitting provision. 328 F.3d at 1173-79.

More importantly, a neutrally worded employer/employee arbitration agreement cannot be considered substantively unconscionable simply because it is practically speaking more likely for an employee to bring a claim against its employer than vice versa. To hold otherwise would be to render almost all such agreements automatically unenforceable, regardless of how they are drafted. Therefore, even though the practical disadvantages flowing from the Agreement appear to fall somewhat disproportionately on Plaintiff and other employees, this fact, when combined with the minimal procedural unconscionability found above, is insufficient to render the Agreement unconscionable as a whole.

**(ii)  Attorneys' fees provision for enforcement of Agreement**

Plaintiff also claims that the Agreement is one-sided in practice because the contract term permitting either party to recover attorneys' fees as the result of a successful motion to compel arbitration is almost certain to impose an additional cost on Plaintiff and other employees who are unaware of the agreement to arbitrate. Without going so far as to agree with Plaintiff that "it is practically impossible for any employee to avoid being subjected to attorneys [*sic*] fees," it does appear that the attorneys' fees provision would under almost any

1 scenario be applied against the employee seeking to file a claim against Defendant, and not the
2 reverse. Although the provision is facially neutral,[4] given the fact that the Agreement is a
3 standard form contract imposed and drafted by Defendant such that Defendant is undoubtedly
4 aware of its terms, and given that most if not all claims likely to fall within the Agreement's
5 purview are those brought against Defendant by its employees, the attorneys' fees provision
6 will in practice almost always operate to the detriment of one side rather than the other. In
7 addition, the language constituting the provision itself is buried at the bottom of the
8 Agreement, and is the only potential expense that is not explicitly laid out in the explanatory
9 materials preceding the Agreement.[5] Therefore, a considerably more significant degree of
10 substantive unconscionability exists with regard to this particular provision. Whether it is
11 significant enough to render the provision unconscionable is addressed below.

### (iii) "Repeat player" effect

Plaintiff also argues that Defendant unfairly derives a substantive benefit by designating the AAA to arbitrate any disputes between the parties as a result of the so-called "repeat player effect." According to Plaintiff, the fact that Defendant "repeatedly appears before the same group of arbitrators conveys distinct advantages," including "knowledge of the arbitrators' temperaments, procedural preferences, styles and the like." However, as Defendant points out, the case Plaintiff cites to in support of this proposition dealt with a situation in which disputes between the employer and its employees were designated to be heard before one of only eight possible arbitrators in the district. See Mercuro, 96 Cal. App. 4th at 178. By contrast, the Agreement at issue here permits a dispute to be arbitrated by any of the "hundreds of arbitrators on AAA panels here and across the country." Indeed, the Mercuro Court itself declined to hold that the repeat player effect would, "without more evidence . . . render an

---

[4] The Agreement states in pertinent part: "If any party files a judicial or administrative action asserting claims that are subject to this Binding Arbitration program, and another party successfully stays such action or compels arbitration of such claims, the party filing said action shall pay the other party's costs and expenses incurred in seeking such stay or compelling arbitration, including reasonable attorney's fees."

[5] See, e.g., RESOLVE Pamphlet at p.4 (describing $50 filing fee that must be paid by employee seeking to bring a claim against Defendant); id. (explaining that cost of legal counsel at arbitration must be borne by employee).

arbitration agreement unconscionable." 96 Cal. App. 4th at 178-79. Moreover, given that an employer will logically arbitrate more cases over time than any single employee, the prospect of a greater likelihood that the employer will find itself before the same arbitrator more than once should not by itself make an agreement to arbitrate unconscionable. Therefore, Plaintiff's conclusory allegation that he is subject to a "repeat player effect" here is insufficient to support a finding of substantive unconscionability on these grounds.

### (iv) Availability of attorneys' fees award under FLSA cause of action

Plaintiff further argues that the Agreement "permits for awards of attorney's fees in favor of Defendant, which would not be available in a judicial proceeding under the FLSA." (Doc. No. 8 p.12.) Although Plaintiff does not identify the specific fees provision in the FLSA that allegedly conflicts with the Agreement, this is irrelevant, because the Agreement by its own terms limits the arbitrator to awarding attorneys' fees in a manner commensurate with the controlling statute. Specifically, the Agreement provides that "[t]he Arbitrator shall assess other costs or attorney's fees, in whole or in part, in accordance with applicable law." Thus, to the extent that the FLSA limits the circumstances under which attorneys' fees can be recovered by an employer defendant who is successful in an action brought against it, those same limitations must be followed by the arbitrator deciding the dispute. Therefore, no substantive unconscionability arises from this provision.

### (v) Right to seek collective relief under NLRA

Plaintiff also contends that arbitration in this case would improperly restrict Plaintiff's "statutory, non-waivable right" to "collectively seek relief from an employer" under the National Labor Relations Act ("NLRA"). However, there is no explicit ban on class actions in the Agreement itself, and because Plaintiff may be permitted to proceed with his arbitration on a collective basis, no such restriction of Plaintiff's rights has occurred; therefore, this argument is moot. Indeed, the fact that the AAA has promulgated rules specifically designed to govern class arbitrations indicates that such proceedings are expressly permitted.

### (vi) Chilling effect of AAA rules

Finally, Plaintiff argues that the Agreement is substantively unconscionable because it incorporates the AAA's National Rules for the Resolution of Employment Disputes, which permit the arbitrator to "assess arbitration fees, expenses, and compensation . . . in favor of any party." Plaintiff claims that this rule contradicts the Agreement itself, which states that, with the exception of a $50 filing fee, "[a]ll other administrative expenses, including the fees of the Arbitrator, will be borne by [Defendant]." According to Plaintiff, the "[t]he threat of having the arbitrator assess fees and expenses to employees creates a chilling-effect [*sic*] on employees in asserting their rights."

Plaintiff's argument relies on an incomplete reading of the AAA rules. The rule quoted by Plaintiff states in full:

> The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law. The arbitrator shall, in the award, assess arbitration fees, expenses, and compensation ***as provided in Rules 43, 44, and 45*** in favor of any party and, in the event any administrative fees or expenses are due the AAA, in favor of the AAA, ***subject to the provisions contained in the Costs of Arbitration section***.

Rules 43, 44, and 45 provide that the arbitrator's compensation and expenses "shall be borne in accordance with the Costs of Arbitration section," which in turn states: "The employer shall pay the arbitrator's compensation unless the employee, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation." Therefore, Plaintiff's concern that he will be forced to bear the expense of arbitration is unfounded, and is not a source of substantive unconscionability.

### c. Unconscionability and severability

As discussed above, both procedural and substantive unconscionability must be present in order to make an agreement to arbitrate unenforceable. In addition, the degree to which each of these elements appears is important to determining whether a contract provision is unconscionable overall. Here, because it is a contract of adhesion, but because Defendant does not appear to have engaged in any actively oppressive tactics in order to convince or coerce Plaintiff into signing it, the Agreement is only minimally procedurally unconscionable. Cf. Mercuro, 96 Cal. App. 4th at 174-75 (finding a high degree of procedural unconscionability

where, in addition to presenting the plaintiff with an adhesive contract, the employer told the plaintiff that "he 'did not have the option of not signing the agreement' if he wanted 'to make a living [working for the employer],'" and that "if he did not sign the agreement he would be 'cut off' and made to 'pay big time'" because the employer would "take whatever action was necessary to drive [him] out"). Therefore, a higher degree of substantive unconscionability is needed to render the Agreement unenforceable.

There are only two possible sources of substantive unconscionability in the Agreement. The first arises from the fact that, as a practical matter, an agreement to arbitrate all claims in the employment context tends to have a disproportionate effect on employee claims against employers. However, as discussed above, this alone cannot be sufficient to render the Agreement as a whole unconscionable; to rule otherwise would be to essentially hold all employment arbitration agreements invalid, which is clearly not the case. See Lagatree v. Luce, Forward, Hamilton & Scripps, 74 Cal. App. 4th 1105, 1127 (1999) (citing cases to demonstrate that "a compulsory predispute arbitration agreement is not rendered unenforceable just because it is required as a condition of employment or offered on a 'take it or leave it" basis'"). Thus, this low degree of substantive unconscionability, combined with the Agreement's minimal procedural unconscionability, does not render the Agreement unenforceable.

On the other hand, the attorneys' fees provision does create a higher degree of substantive unconscionability that, when combined with the procedural unconscionability inherent in any contract of adhesion, makes this particular provision unconscionable overall. However, under California law, the court has the discretion to decide whether to merely sever the unconscionable provision, or to refuse to enforce the contract in its entirety. Ingle, 328 F.3d at 1180. "In exercising this discretion, courts look to whether 'the central purpose of the contract is tainted with illegality' or 'the illegality is collateral to [its] main purpose.'" Id. (quoting Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 895 (9th Cir. 2002)). Here, the attorneys' fees provision is the only clause of the Agreement that is unconscionable, and its inclusion in the Agreement does not appear to affect the "central purpose of the contract."

Therefore, the attorneys' fees provision should be severed from the Agreement, leaving the remainder of the Agreement in force.

### 3) Undue influence

Plaintiff also raises the possibility that the Agreement is unenforceable as the product of undue influence. In support of this argument, Plaintiff claims that he "was required to sign a stack of documents that neither he nor [Defendant's representative Mr. Mitchell] understood." However, Plaintiff cites no legal authority for this doctrine, and makes at best a cursory argument that it applies under the circumstances.

"Undue influence is a contract defense based on the notion of coercive persuasion. Its hallmark is high pressure that works on mental, moral, or emotional weakness, and it is sometimes referred to as overpersuasion." Starr v. Starr, 189 Cal. App. 4th 277, 284 (2010). It arises when one party "tak[es] unfair advantage of another's weakness of mind," "tak[es] a grossly oppressive or unfair advantage of another's necessity or distress," or "obtain[s] an unfair advantage" by "breach[ing] . . . a confidential relationship." Id. None of the facts described by Plaintiff here can be categorized as an exercise of undue influence by Defendant over Plaintiff. Therefore, this argument is without merit.

Because the Agreement is enforceable, save for the attorneys' fee provision, and because there is no dispute that Plaintiff's claim falls within the scope of the Agreement, the court GRANTS Defendant's motion and orders Plaintiff to submit his claim to arbitration.

### B. Permissibility of Class Arbitration

Defendant further seeks an order from the court requiring Plaintiff "to pursue his claims against Defendant on only an individual and not a class-wide or collective basis." Its argument is based primarily on the U.S. Supreme Court's holding in Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., in which the Court found that a party "may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." In other words, under this rule, parties must affirmatively authorize class arbitration in order for such a procedure to be applied. Defendant also cites to another recent Supreme Court case, AT&T Mobility v. Concepcion, which it claims further bolsters its

position that class actions are poorly suited for arbitration.

Defendant's request for relief from class-wide arbitration is denied. The Supreme Court's holding in Stolt-Nielsen does not appear to be applicable under the circumstances currently before this court. In Stolt-Nielsen, the Court based its ruling on certain fundamental principles underlying arbitration agreements, including "the basic precept that arbitration 'is a matter of consent, not coercion.'" 130 S. Ct. at 1773 (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989)). The Court also emphasized that agreements to arbitrate should be enforced under the FAA in order to "give effect to the contractual rights and expectations of the parties," since the parties had mutually "agree[d] to forgo the legal process and submit their disputes to private dispute resolution." Id. (quoting Volt Info. Scis., 489 U.S. at 479).) However, as the instant Agreement is a contract of adhesion (see infra Part III.A.2.a), it cannot be said that the same logic applies here. See id. at 1783 ("[T]he Court apparently spares from its affirmative-authorization requirement ***contracts of adhesion presented on a take-it-or-leave-it basis***." (Ginsburg, J., dissenting) (emphasis added)).

In addition, to the extent that Defendant cites to the Court's reasoning in Concepcion as "compell[ing]" this court to reject the possibility of class arbitration here, its dependence on that case is similarly misplaced. First, the Concepcion Court relies heavily on the holding of Stolt-Nielsen, which is inapplicable for the reasons described above. See, e.g., 131 S. Ct. 1740, 1750-51 (2011). Second, the Court also makes several references to the fact that collective actions are particularly inappropriate in the arbitration context because arbitrators and arbitration procedures are not fitted to deal with issues regarding the protection of absent class members. See, e.g., id. at 1750 ("Classwide arbitration includes absent parties, necessitating additional and different procedures and involving higher stakes. . . . [W]hile it is theoretically possible to select an arbitrator with some expertise relevant to the class-certification question, arbitrators are not generally knowledgeable in the often-dominant procedural aspects of certification, such as the protection of absent parties."); id. at 1751 ("If procedures are too informal, absent class members would not be bound by the arbitration.").

1 However, 29 U.S.C. § 216(b)—the provision of the FLSA under which Plaintiff brings the
2 instant suit as a class action—permits class members to participate in the suit on an *opt-in* basis
3 only, eliminating what appears to be the Concepcion Court's primary concern about the ability
4 of an arbitrator to properly oversee a class arbitration. Therefore, Defendant has failed to
5 demonstrate sufficient legal support for its position, and its motion for a declaration prohibiting
6 Plaintiff from proceeding with his claim on a collective basis at arbitration is DENIED. Rather,
7 the decision as to what form Plaintiff's action will take going forward is one properly reserved
8 for the arbitrator. Lodge 1327 v. Fraser & Johnston Co., 454 F.2d 88, 92 (9th Cir. 1971)
9 ("Once it is determined that a dispute is arbitrable, procedural questions are for the arbitrator."
10 (citing John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557-59 (1964))).

11     **C.    Attorneys' Fees on the Instant Motion**

12     Defendant also seeks to recover attorneys' fees in connection with bringing a successful
13 motion to compel arbitration. As discussed above, that provision of the Agreement is
14 unconscionable, and should be severed from the Agreement and not enforced. Therefore,
15 Defendant may not recover any fees incurred as a result of the instant motion, and that portion
16 of its motion is DENIED.

17 //
18 //
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

## IV. CONCLUSION

For the reasons set forth above, the court hereby GRANTS IN PART and DENIES IN PART Defendant's motion to compel arbitration and for attorneys' fees. The parties are ordered to submit their dispute to arbitration pursuant to the Agreement signed on December 31, 2008, and, pursuant to 9 U.S.C. § 3, this action is STAYED pending the outcome of that arbitration. However, the court declines to take a position on whether Plaintiff should be permitted to proceed on a collective basis. Furthermore, Defendant is not entitled attorneys' fees incurred in connection with bringing this motion.

**IT IS SO ORDERED.**

DATED: August 3, 2011

                                            Hon. Jeffrey T. Miller
                                            United States District Judge